The opinion of the court was delivered by
Nicholls, C. J.
The act, the enforcement of which is asked in this proceeding, is entitled: “An act giving the right to incorporated cities or towns of the State, to demand from the police juries of their respective parishes, the licenses collected annually by the parishes from the cities and towns on all business, trades, professions and occupations carried on within said cities and towns, less the criminal expenses and the school expenses, and all other expenses paid out by the parishes, on account of said cities or towns, and providing that the taxes collected by the parishes on the properties situated in the cities and towns be first exhausted in paying these expenses, and providing how these expenses are to be ascertained.”
*1253 By the first section, it is enacted that the incorporated cities and towns of the State, through their mayor or any other person authorized by their council, shall have the right to demand and have paid over to them, by the police juries of their respective parishes, all the licenses collected annually by the parishes on all businesses, trades, professions and occupations carried on within said cities or towns, less the criminal and public school expenses, and all other expenses paid out by the parishes on account of the cities and towns.
The second section provides that each city or town taking advantage of the act shall be required to defray all expenses occurring from and growing out of the prosecution of crimes, offences and misdemeanors committed within its corporate limits, also all expenses for running, conducting and maintaining the public schools in its corporate limits, and all other expenses paid out by the parish on account of the cities or towns.
The third section provides that the city or town wishing to take advantage of the act, shall apply through its mayor, or any person authorized by its council for that purpose, to the police jury of the parish, at its first meeting of each year, and the police jury shall grant the demand, and shall, at that meeting, advise its collector and treasurer of the demand; instruct them that all taxes, licenses and other moneys collected by the parish on all properties, businesses, trades, professions, occupations, situated or carried on within said cities or towns, shall be kept separate from all other funds, and not paid out, except as provided in the act.
The fourth section provides: “That the clerk of the District Court of the parish shall keep a record of the expenses occurring through his office to the parish on account of the city or town', and the sheriff of the parish shall keep a record of such expenses occurring through his office. The. president of the school board shall keep a record of the expenses for running, conducting and maintaining the public schools of the city or town.
The fifth section makes it the duty of the collector of the parish to present to the police jury, at its second meeting of the succeeding •year, a statement, certified to by the treasurer, of the amount of taxes, licenses and other moneys collected by him on all properties, business, trades, professions and occupations, situated or carried on within the limits of the city or town for the preceeding year, and the police jury shall order a warrant drawn on the treasurer of the par *1254 ish in favor of the mayor of the city or town for the amount of the licenses collected by the parish as aforesaid, less the collector’s and treasurer’s percentage on same, which shall be the same as that of the State and parish, and less the amounts of criminal and public school expenses, and all other expenses paid out by the parish on account of said city or town for that year. It directs that the criminal expenses shall be based upon the statement of the clerk of the court, and of the sheriff, made in writing under oath, and that the public school expenses be based upon a statement made in writing under oath by the president of the school board of the parish. The section contains a proviso that all expenses of whatever nature paid out by the parish on account of the city or town taking advantage of this act shall be paid out of the taxes collected on properties situated in said city or town,, and if these amounts be not sufficient, then the license fund collected from city or town, or a sufficient amount thereof, is to be taken to make up the deficiency, and the balance of the licenses is to be paid over to the city or town, provided that any surplus remaining from the taxes, and other moneys other than licenses collected by the parish from the cities or towns shall be used by the parish as they deem proper.
The sixth section provides, that under the head of criminal expenses, under the act, shall be included the fees and charges of the magistrates and constables and other expenses growing out of and attending the prosecution before magistrates of crimes, offenses and misdemeanors, committed within the corporate limits of said city or town, and makes it the duty of the magistrates and constables to keep a separate account of the amounts paid out by the police jury for such services, and on account of all other expenses not before provided for, which should be paid out by the parish on account of the city or town. It also provides that under the head of criminal expenses, shall be included a pro rata of expenses of the cities and towns for building, maintaining and repairing the jails and courthouses belonging to the parish, the pro rata to be fixed by the police juries.
The seventh section declares that if the amounts collected by the parish from the city or town are not sufficient to pay the criminal, public school expenses, and other expenses of the city or town paid out by the parish, the parish would have the right to refuse to grant the city or town the privilege granted under the act for another *1255 year, and to. continue to so refuse, until it had been shown by the city or town, to the satisfaction of the police jury, that the taxes, licenses and other moneys-collected by the parish from the city or town on account of accumulation of property and moneys, or otherwise, are sufficient, provided that no parish shall have the right to refuse any city or town applying under the act, until, by an actual test under it of one year, it is shown that the expenses of the city or town to the parish are more than the taxes, licenses and other moneys collected by the parish from the city or town.
It will be seen from an examination of this act that the Legislature has attempted to provide for the opening of a credit and debit account between the towns and the parishes in the parishes in which there are incorporated towns. The towns are to be credited with all moneys arising from taxation upon properties within their limits, and also with the amount of all licenses imposed by the parish which are found to come from persons doing business within the different corporations, and they are to be debited with all amounts paid out by the parish on account of matters from which the towns are supposed to have been directly benefited, or for which they are supposed to be specially responsible.
The moneys standing to the credit of the towns are ordered to be separated from the balance of the moneys in the parish treasury, and the debits with which the towns are to be charged are directed to be ascertained by a complicated system of accounts to be kept by different State and parish officers, and reported to the police jury.
It will be observed that the statute does not contemplate that any portion of the taxes derived from the town properties should ever be turned over to the towns. They are to be applied primarily to the payment of the claims which the Legislature seems to have selected as those for which towns are peculiarly and equitably chargeable, and they are to be freed and to be made applicable for any purpose to which the police jury might see fit to turn them when it is found that there is a surplus over and above the payment of such claims. The moneys, however, drawn from licenses from "persons living within the towns are, under no circumstances, to be applied to general parish purposes, but they are to be held as a sort of reserve fund to make good any deficit which might be found to exist by reason of the taxes from the town being insufficient to meet ' the legal demand upon it from the separate tax fund. If no such *1256 deficit is found to exist, then the whole amount drawn from licenses paid by the townspeople is to be paid over to the town without designation as to the purposes for which it is to be subsequently used.
This case has been ably presented on both sides, but the arguments have taken a much wider range than the determination of the issue involved requires. We have to be controlled by the special provisions of our own Constitution, and reasoning drawn from the general relations which the State, the parishes and the cities bear to each other in other jurisdictions furnish us little assistance.
Article 202 of the Constitution declares that the taxing power may be exercised by the General Assembly for State purposes, and by parishes and municipal corporations, under authority granted to them by the General Assembly, for parish and municipal purposes.
Article 206 declares that the General Assembly may levy a license tax, and in such case shall graduate the amount of such tax to be collected from the persons pursuing the several trades, professions, vocations and callings. * * * No political corporation shall im - pose a greater license tax than is imposed by the General Assembly for State purposes.
The District Judge, in rendering his opinion, said: “The only question under this article (202) would seem to be whether the grant of power to the parishes and municipal corporations, for parish and municipal purposes means that they can exercise this power for each other and each for itself. Oan the parishes exercise the taxing power for municipal purposes and municipal corporations exercise it for parish purposes? Such, I think, was not the intention of the framers of the organic law. It is such an extraordinary proposition that each could be authorized by the General Assembly to exercise the taxing power for the benefit of the other, that such a conclusion could only be reached when supported by'a plain and unambiguous provision of the Oonstitntion. It seems to the court that the contrary is the plain meaning of the article above quoted, and that the Legislature is without warrant or right, under the Oonstitution, to require or authorize the police jury to exercise the taxing power for the use of municipal corporations of the parish as is evidently the purpose and effect oi this Act, No. 165, under discussion. The taxing power is a most important one, and should be guardedly kept within the Constitutional limitations, and perhaps one of the best protections, both *1257 to the public service on the one hand, and to the taxpayer on the on the other, is the rule firmly imbedded in our constitutions for many years, that the same power should impose the tax and control its expenditure.”
We agree in opinion with the District Judge that the framers of the Constitution intended to keep separate and distinct the taxing power of the State, that of the parishes and that of the municipal corporations; that they never intended, in declaring that this power should be exercised by the parishes and municipal corporations “ under authority granted to them by the General Assembly,” that this authority should extend to empowering either of them to do so for purposes other than those in which each was directly concerned. It is easy to see that through this act the taxing power of the towns could be supplemented by that of the parishes for town purposes.
But we fail to see the authority under and by which the General Assembly can, after the parishes, in the exercise within constitutional limits of their taxing power, have acted for parish purposes, step in and apply the moneys arising from this legal exercise of their rights to purposes other than those which, in the opinion of the parish authorities, made the levy of the taxes and the imposition of the licenses necessary — taxes and licenses which they never would have levied or imposed — if they were to be forcedly taken away from them under orders of the General Assembly. When the police jury exercises its authority to impose licenses through the parish, it necessarily does so by ordinances general in their character, necessarily taking in people within as well as without the towns — its purpose is to utilize the moneys for general parish purposes — and it is difficult to see by what authority it can be prevented from doing so by an arbitrary order from the Legislature that a particular portion of the fund should be devoted exclusively to the interests of one particular portion of the parish, and then only in a certain contingency, which not happen ing, the moneys are not to be held in the parish treasury for other parish purposes, nor to be returned to the parties who paid the licenses, but to be turned over to the towns, who in the meantime may have exercised their power of taxing and licensing their own inhabitants up to the full constitutional limit.
Oounsel for the parish say very pertinently: “The Legislature, under the Art. 202, is restricted to the power to authorize only. The article confers the taxing power on the parishes ‘ for parish pur *1258 poses ’ just as effectually as it does the power in the Legislature for ‘State purposes,’ except only that the parish must exercise it under authority from the General Assembly. The Legislature is given no power itself to levy taxes for parish purposes, for that power is lodged by the article in the parish.
“It results that the parish must possess, in the power to tax, the same discretionary power over the subject as to the amount of the tax it will levy within the constitutional limit, and as to what are parish purposes, as that exercised by the Legislature in its power to tax for State purposes. Where the Legislature authorizes the parishes to exercise the taxing power to the full limit of the constitutional power conferred, then, necessarily, the exercise of that power in the parishes must reside in the parochial authorities exercising the parish power, to be exercised by them to meet the parish necessities of maintenance and sustenance. And these parochial authorities are only restricted in the exercise of the taxing power by constitutional limitations and legislative authorization, and within those limits it is solely a matter of parochial discretion to judge of the amount of the parish expenses and obligations- they are required to meet by the exercise of the taxing power, and also to judge of what are parish purposes which they are required to meet under their taxing powers. These prerogatives of discretion in the authoiity to which the State has delegaced the use of her taxing powers are inherent and necessary to the exercise of the power delegated.
“The immediate effect of the act is to take off the alimony provided for the support and subsistence of parochial institutions, to confer it upon towns and cities which are alike provided for, under Art. 202 of the Constitution; are endowed with the same powers of taxation for their purposes which are given to the parishes for parochial purposes. Alimony is apportioned to each class to be derived from the power, uniformly, equally and ratably to tax the citizens and property within the respective borders of each, under a system of fundamental principles inherent to American constitutional law, that local affairs shall be governed by the local authorities, and that the burdens of government shall be borne uniformily, equally and ratably throughout the territorial limits of the governing powers. We have been unable to reconcile the aims, objects or effects of Act No. 165 with the great underlying principles of our form of government or with the restriction or prohibition of the present Constitution.”
*1259 We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed.