No. 13,145.

R. R. WEBSTER vs. THE POLICE JURY OF THE PARISH OF RAPIDES.

SYLLABUS.

Article 202 of the Constitution of 1879, whilst properly construed to mean that the taxing power was to be exercised by the General Assembly, for State-

purposes, by parishes for parish purposes, and by municipal corporations for the purposes of such corporations, is also to be construed with Article 163 of the same Constitution, which provides that "the General Assembly shall make it obligatory upon each parish to support all infirm, sick and disabled paupers residing within its limits," etc. And—when so construed did not affect the power of the General Assembly, by the adoption of Act No. 157, of the Acts of 1894, to require the parishes to pay the expense of treatment, at the Keely Cure Institute, of persons contemplated by said act and as therein provided.

O N APPEAL from the Tenth Judicial District Court for the Parish of Rapides. *Thornton, J. ad hoc.*

*J. C. Blackman* and *J. C. Ryan* for Plaintiff and Appellant.

*Andrews* and *Hackenyos* for Defendants and Appellees.

Submitted on briefs May 2, 1899.
Opinion handed down May 15, 1899.

The opinion of the court was delivered by

MONROE, J. Plaintiff, proceeding under Act 157, of 1894, obtained an order from the judge of the court *a qua,* that "Robert Webster be treated for drunkenness, and the expenses of his treatment, at the Keely Institute at New Orleans, La., be paid by Rapides parish, provided said expenses do not exceed one hundred dollars, and said institute will receive and treat him with this understanding, as provided by Act No. 157, of the acts of 1894."

It appears that Robert Webster was the plaintiff's brother and that, after obtaining this order, plaintiff applied to the Keely Institute to receive and treat him, but was informed that the $100 must be paid in advance, whereupon he borrowed, from different persons, amounts aggregating the sum required and paid the same to the institute, and his brother was received, treated and discharged as cured, and the claim of the institute, if any it had, was assigned to plaintiff, and by him presented to the police jury for payment, and, payment having been refused, plaintiff brought this suit to recover the amount. It also appears that the judge of the District Court having recommended the police jury to make the payment, was recused, and J. R. Thornton, Esq., a member of the bar, was selected to act in his place.

Several matters were set up by way of exception, and answer, which

were overruled, or decided adversely to the defence, and the final judgment, in defendant's favor, was based upon the ground that Act No. 157, of 1894, is unconstitutional, for the reason: That, under Article 202 of the Constitution of 1879, "the taxing power may be exercised by the General Assembly, for State purposes, and by parishes and municipal corporations, under authority granted to them by the General Assembly, for parish and municipal purposes"; from which it is deduced that the General Assembly has no constitutional authority to impose upon a parish an obligation requiring the expenditure of funds derived from taxation levied under parish authority; such expenditure, it is said, being a matter entirely within the discretion of the parochial authorities, and beyond the control of the General Assembly.

From this judgment the plaintiff appealed to this court, under that provision of Article 85 of the Constitution of 1898, which gives jurisdiction where a law of the State has been decreed unconstitutional, and declares that "the appeal on the law and the facts shall be directly from the court in which the case originated to the Supreme Court."

Act 157, of 1894, is entitled "An act to provide for the treatment and cure of habitual drunkards or inebriates, or other persons addicted to the intemperate use of alcohol, morphine, cocaine or other narcotics; and to provide for the payment thereof by cities, parishes and municipalities in this State."

It provides, in substance, that any relative or friend of a drunkard, joined by three taxpayers, may petition to the court to have him sent to an institution for treatment, and if it appears to the judge that the facts are as stated, and that the person named is an inebriate, and has been a resident of the parish or city for a year, and is willing to be treated, and that neither he nor his petitioning kin are able to bear the expense, the judge may order that the expense of such treatment, not to exceed $100, "shall be paid out of the treasury of the parish or city in the same manner that other claims against such parish or city for the administration of justice are paid."

The learned judge ad hoc reached the conclusion that this act is unconstitutional with reluctance, and, he states, under a sense of obligation to be guided by the opinion of this court in the case of "The Town of Mansfield vs. Police Jury of the Parish of DeSoto," 47 Ann., 1244. A comparison of that case, however, with the instant case, will, we think, disclose such a difference in the purpose and effect of the respective statutes under consideration as to render the opinion men-

tioned inapplicable here. In that case the questions to be determined were, whether Article 202 of the Constitution of 1879, should be construed as authorizing the parish to collect taxes for the purposes of the parish and also for the purposes of municipal corporations within the parish, or whether that article meant that the parish should levy and collect parish taxes for parish purposes alone. And the court having reached the conclusion that the article meant that the parish should collect taxes for parish purposes alone, the next and only remaining question was, whether it was competent for the General Assembly, in view of such a constitutional provision, to require that parish taxes, thus collected, for parish purposes, should be turned over to a municipality for municipal purposes; which question was decided in the negative.

Whether the General Assembly could require that taxes levied and collected by a parish, for parish purposes, should be devoted by the parish to the discharge of obligations imposed upon the parish by the Constitution itself, or which the General Assembly was required by the Constitution to impose upon the parish, was not involved in the case, and was not decided. That question is, however, presented in the case under consideration and must be determined. Article 163 of the same Constitution in which the Article 202, which has been quoted, is to be found, reads as follows, to-wit:

"The General Assembly shall make it obligatory upon each parish to support all infirm, sick and disabled paupers residing within its limits; *provided,* that in every municipal corporation in a parish where the powers of the police jury do not extend, the said corporation shall support its own infirm, sick and disabled paupers."

It would be an extreme case which would justify a court in reading such an article, or any article, entirely out of the Constitution, and yet, if it be held that Article 202 precludes the General Assembly from exercising any control whatever over funds collected by a parish by means of a taxing power vested in such parish by the General Assembly, and derived from no other source, Article 163 is stricken with nullity—a result unnecessary, and therefore inadmissible, according· to the familiar canon of construction, that a law should be so construed as to give the greatest possible effect to all its provisions.

Long before the Constitution of 1879 was adopted, we had, upon our statute books, laws imposing upon the different parishes and municipalities the expense of the judicial inquiry necessary to send

an insane person to the asylum, and to provide for his transportation (R. S. 1768-9); and imposing upon the parishes and municipalities, these very criminal expenses, which are referred to in the opinion in the case of The Town of Mansfield vs. Police Jury. (Act 92 of 1878).

It has never, however, been thought that Article 202 of the Constitution of 1879, in providing that the taxing power should be exercised by parishes, for parish purposes, "under authority granted to them by the General Assembly," had the effect of relieving the parishes of these obligations, and there is no reason that we have been able to discover, why such obligations should be distinguished from the obligation to make provision with regard to a person who, in the language of the statute, "has acquired the habit of using spirituous, malt or fermented liquors, cocaine or other narcotics, to such an extent or degree as to deprive him of reasonable self-control." He is equally a weakling, as a lunatic or a criminal, and may become either the one or the other. This view of the matter has been taken by the Supreme Court of Maryland in Baltimore vs. Keely Institute, 31 Md., 106, (27 L. R. A., 646). And we think it not only correct as a matter of interpretation, so far as the Constitution of this State is concerned, but also humane and reasonable.

The facts have been found against the defendant by both the judge, whose duty it was, first, to inquire into the matter, and the judge ad hoc, by whom the case was tried, and we think that finding fully sustained by the evidence in the record. The suggestion that the plaintiff is not entitled to recover because he is not the person who was treated, we presume, is not seriously urged. The plaintiff is shown by the evidence to be a poor man, who did all that the law required should be done in order to impose upon the Parish of Rapides the obligation to pay this $100. He had the right, under the circumstances, to place his brother in the Institute for treatment, and to look to the parish to pay the bill, and if, as between himself and the institute, and in order that the purpose of the law might not be defeated, he borrowed the money and paid the fee required by the institute, in advance, he still has the right to look to the parish to pay the bill.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that there be, now, judgment in favor of the plaintiff, R. R. Webster, and against the defendant, The Police Jury of the Parish of Rapides, in the sum

of one hundred dollars, together with all the costs of this suit, the same to be paid in the same manner as other claims against said parish for the administration of justice are paid.

Mr. Justice Blanchard dissents.