CUTRER, Judge.
This is a companion suit with the case McGuire v. Honeycutt, et al., 387 So.2d 674 (La.App. 3rd Cir. 1980), Docket Number 7704.
*681 Katherine D. Honeycutt brought this action to recover damages for personal injuries arising out of an intersectional collision. Defendants are James A. Welch, the State of Louisiana through the Military Department, and Travelers Insurance Company, insurer of the Military Department. The trial court awarded judgment to plaintiff and against defendants in the sum of $256.94 for special damages and $8,500.00 as general damages. Defendants have appealed with regard to the award of general damages. Plaintiff has answered the appeal seeking an increase.
The sole issue on appeal is whether the award of general damages was excessive.
The facts of the case relating to the occurrence of the intersectional collision are set forth in the companion case of McGuire v. Honeycutt, et al., supra.
The record reveals the following:
Mrs. Honeycutt was a 58 year old widow at the time of the accident. Mrs. Honey-cutt testified at trial that immediately after the accident her knees, ankles and arms were hurting. Plaintiff was taken by her son-in-law to Rapides General Hospital shortly after the accident. The hospital emergency room report in evidence reflects that plaintiff sustained abrasions to both knees, contusions on the left arm and left ribs, strained neck muscles and that the neck was tender in the mid — cervical region. Plaintiff was given an injection, apparently to relieve pain. X-rays were taken. Plaintiff was given a neck brace to wear. She was given some prescriptions and some medication.[1]
Plaintiff stated that on the day following the accident, most of her body was in pain, but especially in her wrist, both legs, and ankle, her neck, back, shoulders and head. For the first week after the accident, she spent most of her time in bed. Plaintiff missed one week of work immediately following the accident.
For approximately one month, Mrs. Ho-neycutt wore a neck brace. During this period, Mrs. Honeycutt stated that she continued to experience pain. She testified that she was unable to comb her hair, do her housework, cook or drive. Plaintiff explained that she is reluctant to go to physicians. Her pain became so intense that she finally went to her personal physician, Dr. Hubert Prevost, for the first time approximately two months after the accident.
Plaintiff testified that she was able to return to work about a week after the accident, but for some time she was unable to fully perform her duties. She missed work occasionally due to her pain. She stated that she tired easily due to her neck and shoulders.
Plaintiff stated that between the first month following the accident and the time of trial (November 6, 1979), she was still experiencing pain in her neck and shoulders and she continued to have headaches. The pain is constant in her back and shoulders, but not constant in intensity. She stated that she takes medication (muscle relaxants) for the pain. Plaintiff stated that her ankle is still weak and that occasionally it would “give,” causing her to stumble. She testified that she is unable to take care of her garden as she had done prior to the accident.
Dr. Hubert Prevost, a general surgeon who had been plaintiff’s physician for some time, examined plaintiff on January 3,1979. He testified that she gave him a history of having been in an automobile accident in November 1978. She informed Dr. Prevost that she was still having discomfort in the shoulders and that she was still having headaches. Dr. Prevost’s examination revealed tenderness in the trapezii muscles (the big neck muscles and shoulder muscles behind the neck). Dr. Prevost’s diagnosis was that plaintiff was suffering from chronic muscle sprain, which results from the overstretching of muscles when they are tense. Dr. Prevost stated the injury diagnosed is consistent with the occurrence of the automobile accident.
According to Dr. Prevost, such a sprain is very uncomfortable. He prescribed analge *682 sic medication containing a muscle relaxant. He also prescribed an anti-inflammatory agent due to the chronic nature of the sprain. The plaintiff was instructed to use heat and to perform an exercise for the neck to strengthen the muscles and to increase her comfort in her neck. He stated that exercise would be painful in the beginning.
Dr. Prevost again examined plaintiff in August 1979. Plaintiff still had considerable discomfort at times. She still had tenderness over the lower cervical vertebra. She did, however, have normal motion of the neck. Dr. Prevost felt she still had the stress problem from the muscle strain.
Dr. Prevost felt at that time that plaintiff would probably continue to have trouble at intervals, particularly with relation to fatigue. According to Dr. Prevost there is a lot of fatigue under emotional stress and that conditions like plaintiff’s tend to flare up.
According to Dr. Prevost, usually such conditions, with the use of exercise, analgesics and heat, when flareups occur, will clear up over various lengths of time. During this time pain can be severe enough to require rest and medication for pain. He also stated that with the tension and pain in the muscle, one usually gets a headache.
Mrs. Verna Shea, a close friend of plaintiff’s, testified that she saw Mrs. Honeycutt the day after the accident. According to Mrs. Shea, plaintiff’s left arm was bruised and swollen. She also stated that both of plaintiff’s knees and one of her ankles were swollen. Plaintiff appeared to be unable to lift her injured arm. She was unable to do housework or cooking for approximately one month following the accident. She was also unable to drive during this period and was dependent upon her daughter and Mrs. Shea for transportation. Mrs. Shea testified that for some six months following the accident (until Mrs. Shea moved away), plaintiff had frequent headaches, tired easily and was depressed. Plaintiff was unable to maintain a garden as she had prior to the accident. Mrs. Shea testified that up until she moved, though plaintiff had improved in her condition, she had not fully recovered.
Defendants argue that the award of $8,500.00 in general damages is excessive and should be reduced to not more than $5,000.00. We disagree.
Under the guidelines established by the Supreme Court, we cannot say that the trial judge abused his much discretion. We may not, under these guidelines, look to prior awards but only to the individual circumstances of the present case. Reck v. Stevens, 373 So.2d 498 (La.1979).
We cannot say under the facts and circumstances of this particular case that the award for general damages is a clear abuse of the trial court’s “much discretion.’’ Likewise, we reject the plaintiff’s request by her answer for an increase.
For the reasons assigned, the judgment of the trial court is affirmed. Defendants are assessed with costs of this appeal.
AFFIRMED.

. The physician who saw plaintiff in the emergency room did not testify.