529 So.2d 384 (1988)
The BOARD OF DIRECTORS OF the LOUISIANA RECOVERY DISTRICT
v.
ALL TAXPAYERS, PROPERTY OWNERS, AND CITIZENS OF the STATE OF LOUISIANA and Non-Residents Owning Property or Subject to Taxation Therein, and All Other Persons Interested in or Affected in Any Way by the Issuance of Sales Tax Bonds of the Louisiana Recovery District.
No. 88-C-1621.
Supreme Court of Louisiana.
June 24, 1988.
Rehearing Denied June 27, 1988.
*386 A. Edward Hardin, Baton Rouge, for applicant.
Thomas A. Casey, New Orleans, Charles L. Patin, Jr., Baton Rouge, John N. Kennedy, New Orleans, Martha S. Hess, Harold B. Judell, William H. Beck, Jr., Susan Weeks, Meredith L. Hathorn, David E. Henderson, Foley & Judell, Baton Rouge, for respondent.
William J. Doran, Jr., Baton Rouge, amicus curiae for Police Jury Ass'n.
DENNIS, Justice.
This is a suit to validate bonds brought by the Louisiana Recovery District, a political subdivision of the state, and answered by Roberta Madden, a taxpayer, who challenges the constitutionality of the statute that created the Recovery District and empowered it to levy a tax and to issue bonds, Act 15 of the First Extraordinary Session of 1988.
Finding a state of emergency to exist in state and local governments because of accumulated fiscal deficits, the Legislature enacted, by two-thirds of the elected members of each house, Act 15 of the First Extraordinary Session of 1988. The Act created the Louisiana Recovery District, specifically designated as a special district and a political subdivision, having boundaries coterminous with the state. Additionally, the Act empowered the district to (1) adopt an ordinance levying and collecting a sales and use tax not to exceed one cent, and (2) issue bonds to be funded by the tax revenues for the purpose of assisting the state and local governments in the reduction of fiscal deficits. Act 15 further provided that the tax shall be imposed by ordinance without the need of an election and that the bonds shall be issued without a state guarantee or a pledge of the full faith and credit of the state.
The Louisiana Recovery District, pursuant to the act, adopted an ordinance levying a one cent sales and use tax and a resolution authorizing the issuance of bonds in an amount up to $1.3 billion. The district brought this suit, pursuant to R.S. 13:5121-30, to validate the bonds. Ms. Roberta Madden answered the suit as a citizen, taxpayer and resident challenging the constitutionality of Act 15, the establishment of the district, and the validity of the bonds. After a trial, the district court upheld and declared the statute, district and bonds to be constitutional and valid. Ms. Madden appealed. The court of appeal, without reaching the merits, sustained a peremptory exception of no right of action raising an objection of no right of action, and dismissed Ms. Madden's pleading and challenge to the statute, district and bonds, 529 So.2d 401. This court granted certiorari to review the judgments of the trial and appellate courts.

I. No Right of Action
The court of appeal sustained the peremptory exception raising an objection of no right of action filed by the Recovery District on the ground that Ms. Madden did not introduce any evidence to prove that she was a member of the class of "taxpayers, property owners and citizens ... [or] other persons interested ... or affected", who are authorized by law to contest the issuance of the bonds. See La.R.S. 13:5123. Ms. Madden filed an answer in which she alleged that she was a citizen, a taxpayer and a resident of East Baton Rouge Parish, Louisiana. The Recovery District did not file its exception in the trial court until all of the evidence had been taken. The Recovery District did not adduce any evidence to show that the pertinent allegations of Ms. Madden's pleadings were incorrect.
In our opinion the court of appeal erred. It is well settled that on consideration of an exception of no right of action the averments of fact in the pleading must be taken as true in the absence of evidence to the contrary. In re Nunez, 203 La. 847, 14 *387 So.2d 680, 681 (1943); Walton v. Hutton, 457 So.2d 1230, 1231 n. 1 (La.App. 1st Cir. 1984); Invest, Inc. v. State, 247 So.2d 175, 177 (La.App. 1st Cir.1971); J.B.N. Morris v. Rental Tools, Inc., 435 So.2d 528, 531 (La.App. 5th Cir.1983); Clark v. Clark, 377 So.2d 544, 547 (La.App. 3d Cir.1979); Jurisich v. Board of Levee Commissioners, 8 So.2d 554, 557 (La.App.Orl.Cir.1942); Brooks v. Bass, 184 So. 222, 223-24 (La. App.Orl.Cir.1938); see also Burns v. Genovese, 254 La. 237, 248, 223 So.2d 160, 164 (1969); Commercial Nat. Bank v. Sanders, 132 La. 174, 176-77, 61 So. 155, 156 (1913); McMahon, Exception of Want of Interest, 11 Tul.L.Rev. 527, 533-36 (1937). Consequently, in the present case, Ms. Madden's allegations that she was a taxpayer, citizen and resident must be accepted as true, and the appeals court's judgment dismissing her suit must be vacated.

II. Merits
1. A person attacking the constitutionality of a statute of public purpose must show clearly the constitutional aim to deny the Legislature the power to enact the legislation.
The legislative power of the state is vested in the Legislature. La. Const. 1974, Art. III, § 1. Except as expressly provided by the constitution, no other branch of government, nor any persons holding office in one of them, may exercise the legislative power. La.Const.1974, Art. II, §§ 1 and 2. Furthermore, it is a general principle of judicial interpretation that, unlike the federal constitution, a state constitution's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its Legislature. In its exercise of the entire legislative power of the state, the Legislature may enact any legislation that the state constitution does not prohibit. Thus, to hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the Legislature to enact such a statute. Board of Commissioners v. Dept. of Natural Resources, 496 So.2d 281, 286 (La.1986); New Orleans Firefighters Association v. Civil Service Commission of City of New Orleans, 422 So.2d 402, 406 (La.1982); State ex rel Guste v. Legislative Budget Committee, 347 So.2d 160, 164 (La.1977); Hainkel v. Henry, 313 So.2d 577, 579 (La.1975); In re Gulf Oxygen Welder's Supply Profit Sharing Plan, 297 So.2d 663, 665 (La. 1974); see also, State v. Mallery, 364 So.2d 1283, 1284 (La.1978), cert. denied, 442 U.S. 940, 99 S.Ct. 2881, 61 L.Ed.2d 310 (1979) ("Except as limited by the constitution its power is plenary"); Swift v. State, 342 So.2d 191, 194 (La.1977) ("Unlike Congress, our State Legislature has all powers of legislation not specifically denied it by the Louisiana Constitution").
Unless the fundamental rights, privileges and immunities of a person are involved, there is a strong presumption that the Legislature in adopting a statute has acted within its constitutional powers. State v. Griffin, 495 So.2d 1306, 1308 (La. 1986); City of Lake Charles v. Henning, 414 So.2d 331, 333 (La.1982); In the Interest of Voyles, 417 So.2d 497, 500 (La.App. 1st Cir.), writ denied, 420 So.2d 981 (La. 1982); Harry's Hardware, Inc. v. Parsons, 410 So.2d 735, 737 (La.), cert. denied, 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 145 (1982). The presumption is especially forceful in the case of statutes enacted to promote a public purpose, such as statutes relating to taxation and public finance. United States v. Jacobs, 306 U.S. 363, 369-70, 59 S.Ct. 551, 555, 83 L.Ed. 763, 768, motion to set aside judgement denied, 306 U.S. 620, 59 S.Ct. 640, 83 L.Ed. 1026 (1939); Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 167, 46 So.2d 113, 115 (1950); see Board of Education of Jefferson County v. State ex rel. Carmichael, 237 Ala. 434, 443, 187 So. 414, 422 (1939); American Amusement Co., Inc. v. Dept. of Revenue, 91 Mich.App. 573, 283 N.W.2d 803, 805 (1979), appeal dismissed, 446 U.S. 931, 100 S.Ct. 2145, 64 L.Ed.2d 783 (1980); Halbruegger v. City of St. Louis, 302 Mo. 573, 584, 262 S.W. 379, 382 (1924). The party attacking such a statute has the burden of showing clearly that the legislation is invalid or unconstitutional, and any doubt as to the legislation's constitutionality must be resolved in its favor. State v. *388 Griffin, supra; City of Lake Charles v. Chaney, 468 So.2d 1191, 1192 (La.1985); State v. Gisclair, 363 So.2d 696, 698 (La. 1978); State v. Newton, 328 So.2d 110, 117 (La.1975); Ancor v. Belden Concrete Products, Inc., 260 La. 372, 379, 256 So.2d 122, 125 (1971); Buras v. Orleans Parish Democratic Executive Committee, 248 La. 203, 226, 177 So.2d 576, 584 (1965); Board of Barber Examiners of Louisiana v. Parker, 190 La. 214, 273, 182 So. 485, 504 (1938). In an attack upon a legislative act as falling within an exception to the Legislature's otherwise plenary power, it is not enough to show that the constitutionality is fairly debatable, but, rather, it must be shown clearly and convincingly that it was the constitutional aim to deny the Legislature the power to enact the statute. Ancor v. Belden Concrete Products, Inc., supra; Buras v. Orleans Parish Democratic Executive Committee, supra; Board of Barber Examiners of Louisiana v. Parker, supra; U.S. v. Simms, 508 F.Supp. 1179, 1187 (W.D.La.1979); see Morris v. Metriyakool, 107 Mich.App. 110, 309 N.W.2d 910, 911 (1981), affirmed, 418 Mich. 423, 344 N.W.2d 736 (1984); Thompson v. City of Chelsea, 358 Mass. 1, 6, 260 N.E.2d 699, 702-03 (1970); State v. Capone, 115 R.I. 426, 432-33, 347 A.2d 615, 619 (1975).
In attacking the statute in the present case, Ms. Madden does not point to any constitutional provision which expressly limits the power of the Legislature to enact the legislation. Instead, she contends that several constitutional provisions which actually confirm the Legislature's power to create political subdivisions and vest them with taxing authority contain language that also impliedly deprives the Legislature of the ability to enact the statute in question. In our opinion, her arguments based on this language constitute nothing more than speculation, rather than a clear showing of a constitutional intention to limit the power of the Legislature in the manner claimed.
2. The Louisiana Recovery District is a properly constituted political subdivision exercising the power to tax and issue bonds.
Ms. Madden argues that because Article VI, § 30 provides that a "political subdivision" may be granted the power of taxation for "local purposes", the Legislature impliedly was deprived of the power to create a statewide political subdivision with taxing power. After considering the history of Article VI, § 30, the related provisions, and the debates of the Constitutional Convention, we conclude that the Louisiana Recovery District is a valid political subdivision and that it may be granted the power to tax.
One of the main objectives of Article VI of the Constitution on local government was to remove from the Constitution the great mass of material on the subject of special districts and to leave to the Legislature the responsibility for providing for special districts by statutory law. Another objective was to make parishes and municipalities more than mere creatures of the Legislature through constitutional grants of self operative powers. By pursuing these objectives the delegates hoped to eliminate the need for continual amendment of special district and local government provisions and to grant a greater degree of self-government and independence from the Legislature to municipalities and parishes. XVIII Records of the Louisiana Constitutional Convention of 1973: Verbatim Transcripts, September 29, 1973, at 22 [hereinafter cited as Records]; XVI Records, September 20, 1973, at 41, 44-45, 47; Kean, Local Government and Home Rule, 21 Loy.L.Rev. 63 (1975); cf. 3 Projet of a Constitution for the State of Louisiana 241 (1954).
To facilitate these objectives a special district is classified by the local government article as a "political subdivision", which is the basic substate unit of government and generally subject to legislative control. La. Const. 1974, Art. VI, § 44(2). On the other hand, municipalities and parishes are specially classified as "local governmental subdivisions" and granted significant self operative powers. La. Const. 1974, Art. VI, § 44(1); see La. Const. 1974, Art. VI, §§ 26, 27, 28, 29, 32. In two instances a political subdivision, i.e., a special *389 district and others, is granted self operative powers also, viz., to levy special taxes for public works and to issue general obligation bonds. La. Const. 1974, Article VI, §§ 32 and 33. In some instances, to guard against abuse of self operative powers, the local government article expressly provides that a political subdivision must obtain voters' approval before exercising the self-operative power. La. Const. 1974, Article VI, §§ 28, 29, 32 and 33.
In place of the great mass of special district provisions which had been contained in the previous constitution, Article VI, § 19 simply confirms the Legislature's plenary power to create any type of special district and to confer upon it any power the Legislature deems proper, including the power to tax and to issue debt. Article VI, § 19 provides:
Subject to and not inconsistent with this constitution, the legislature by general law or by local or special law may create or authorize the creation of special districts, boards, agencies, commissions, and authorities of every type, define their powers, and grant to the special districts, boards, agencies, commissions and authorities so created such rights, powers, and authorities as it deems proper, including, but not limited to, the power of taxation and the power to incur debt and issue bonds.
Article VI, § 19 was not necessary in order for the Legislature to have unqualified power over the subject matter of special districts. It was only required that the individual special district provisions be removed from the constitution and that no limitation be placed on the Legislature's ability to deal with special districts in the future. The Constitutional Convention delegates were aware of this but elected to include Article VI, § 19 as reassurance to bond attorneys of the validity of any legislative grant of tax and bond authority to any special district created by the Legislature; and to thereby eliminate possible arguments for constitutional protection by any special district. XVIII Records, September 29, 1973, at 22-23, 31.
The local government article reaffirms the legislature's power to create a special district of any size for a public purpose it deems proper. Article VI, § 19 recognizes that the legislature may create special districts by general, as well as local or special laws. Article VI, § 44(5) defines a general law as one of statewide concern uniformly applicable to all persons or to all political subdivisions in the state or which is uniformly applicable to all persons or to all political subdivisions within the same class.
The convention debates further indicate that Art. VI, § 19 was not intended to restrict the prerogative of the Legislature in any way with regard to the geographical size or function of a special district. XVIII Records, September 29, 1973, at 22-24, 29, 33.[*] Since the Legislature has plenary power to create any type of special district and to vest it with powers as it deems proper, the Legislature had the ability to create a district of statewide geographical dimension and to grant it the powers to tax and to issue bonds for any public purpose.
Article VI, § 19 is in keeping with the national trend recognizing that a special district is a public agency created or authorized by the Legislature to aid the state in, or to take charge of, some public or state work, other than community government, for the general welfare. 1 E. McQuillan, Municipal Corporations § 2.13, at 170 (3rd ed. 1987); 1 C. Sands & M. Libonati, Local Government Law § 2.18, at 2-44 (1981). The governmental powers of special substate units may be defined on a functional as well as a geographical basis, and the size and complexity of the function performed by a special district may be such as to overlap with the functions and borders of counties, cities, and, occasionally, *390 state or even international boundaries. 1 C. Sands & M. Libonati, supra, § 2.05, at 2-11; 1 E. McQuillan, supra, § 2.28, at 191-92.
3. The Louisiana Recovery District has been authorized constitutionally to exercise the power of taxation for the purpose of state and local government deficit reduction.
Ms. Madden argues that, because Article VI, § 30 provides that a political subdivision may exercise the power to tax under authority granted by the Legislature "for local purposes", any such delegation of authority may involve or affect only a restricted part of the state. Article VI, § 30, in full, provides:
A political subdivision may exercise the power of taxation, subject to limitations elsewhere provided by this constitution, under authority granted by the legislature for parish, municipal, and other local purposes, strictly public in their nature. This Section shall not affect similar grants to political subdivisions under self operative sections of this constitution.
Careful study of the convention debates indicates that the delegates did not intend by this section to undermine the Legislature's plenary power over the subject matter of special districts confirmed by Article VI, § 19. XXVI Records, November 7, 1973, at 12-13. On the contrary, they intended to adopt the substance of the previous constitutional provisions on the same subject as Article VI, § 30 without change in meaning. XXVI Records, November 7, 1973, at 14.
A review of the history of Article VI, § 30, its predecessors, and interpretations by this court, reveals that in substance the local purposes clause of Article VI, § 30 imposes a very simple requirement: once a political subdivision has been created, the Legislature cannot delegate to that entity a power to tax for a purpose other than one for which the subdivision is established. The underlying reason for this requirement is to promote responsible government by demanding that political subdivisions pursue only the objectives for which they are established and that revenues be spent only upon the public purpose for which they were collected.
The earlier constitutions reflected the meaning of the requirement very clearly. Article 202 of the 1879 Louisiana Constitution provided: "The taxing power may be exercised by the General Assembly for State purposes, and by parishes and municipal corporations, under authority granted to them by the General Assembly, for parish and municipal purposes." Article 224 of the 1898 Constitution provided identically with repect to the general assembly's exercise of taxing power and further provided that the taxing power may be exercised by parishes, municipalities "and public boards" for "parish, municipal, and local purposes, strictly public in their nature." Parallel construction of these terms, readopted by Article 10, § 5 of the 1921 Constitution, suggests that "local purposes" was meant to restrict each public board's taxes to expenditures for that board's purposes rather than to limit parochial, municipal and public board tax revenue expenditures to definite spatial locations.
Consequently, this court has viewed the provisions as a rule requiring correlation between a political subdivision's public purpose and the exercise of its taxing power, not as an indeterminate standard inviting judicial scrutiny of each substate program or project established by the Legislature to see if the proper level of localization has been maintained. In State ex rel. Mansfield v. Police Jury of DeSoto Parish, 47 La.Ann. 1244, 17 So. 792 (1895), the Town of Mansfield attempted to enforce against DeSoto Parish an act of the Legislature giving an incorporated town the right to demand from a police jury the licenses, taxes or fees collected by the parish from occupations carried on in the town. The district court held that the act was in violation of 202 of the 1879 Constitution. The Supreme Court affirmed, holding that "the framers of the constitution intended to keep separate and distinct the taxing power of the state, that of the parishes, and that of the municipal corporations; that they never intended, in declaring that this power should be exercised by the parishes and municipal corporations *391 `under authority granted to them by the general assembly,' that this authority should extend to empowering either of them to do so for purposes other than those in which each was directly concerned." State ex rel. Mansfield v. Police Jury of DeSoto Parish, supra, 17 So. at 795. The court also quoted, in explanation of the reasons for the constitutional rule, the trial judge's reasoning: "`one of the best protections, both to the public service on one hand, and to the taxpayer on the other, is the rule, firmly embedded in our constitutions for many years, that the same power should impose the tax and control its expenditure.'" Id.
In State ex rel. Town of Bossier City v. Padgett, 211 La. 603, 30 So.2d 555 (1946), this court followed the interpretation of the Mansfield case, noting that the provisions of article 202 of the 1879 Constitution are found in the constitutions of 1898, 1913 and 1921, to invalidate a legislative attempt to put parish road taxes to use for a municipality's purposes. The court held that Article 202 of the 1879 Constitution and its successor provisions "clearly separated the taxing powers of parishes and municipalities, and under its provisions neither political subdivision could tax for the benefit of the other." State ex rel. Town of Bossier City v. Padgett, supra, 211 La. at 620-21, 30 So.2d at 560. Further, the court quoted with approval an annotation of the Mansfield case appearing in 46 A.L.R. 609, 664:
Art. 202, La.Const.1879, was designed to keep separate and distinct the taxing power of the state, of the parishes, and of municipal corporations, and parish officers cannot, it seems, under the article, be either authorized or compelled to levy and collect taxes which may be used for the purposes of municipal corporations within them.
State ex rel. Town of Bossier City v. Padgett, supra, 211 La. at 625, 30 So.2d at 562.
See also Webster v. Police Jury of Rapides Parish, 51 La.Ann. 1204, 25 So. 988, 989-90 (1899).
In view of the consistent interpretation by this court of the source provisions of Article VI, § 30, the clear intention of the delegates to adopt the substance of those provisions, the dramatic removal of numerous special districts from the constitution and confirmation of the Legislature's plenary power over this subject matter, and the absurdity of a nebulous localization standard that would require the courts to second guess the legislative utilization of special districts for such public purposes as levee systems, causeways, municipal power associations, irrigation systems, international airports, environmental protection and coastal zone management, we conclude that the constitutional provision is designed to keep separate and distinct the taxing powers of individual political subdivisions and that it does not prohibit the Legislature from enacting a statute creating a statewide special district to impose taxes and issue bonds for the purpose of assisting in the reduction of deficits in state and local governments.
4. The remaining arguments challenging the constitutionality of The Louisiana Recovery District are without merit.
The remaining arguments made in support of the constitutional challenge may be considered and answered in very brief compact form.
A. Separation of Powers. Ms. Madden argues that the statute establishing the Recovery District violates the separation of powers provision because the Legislature by this act delegates to a political subdivision the legislative functions of adopting an ordinance and levying a tax. The local government article, however, expressly authorizes the Legislature to make delegations of these powers to political subdivisions. La. Const. 1974, Article VI, §§ 19, 30, 44(4); see also, La. Const. 1974, Article VII, § 4(C). Further, it is well settled that the general doctrine prohibiting the delegation of legislative power does not prevent the Legislature from delegating to political subdivisions the authority to adopt by-laws, ordinances, rules and regulations to carry out their functions and purposes. See Liter v. City of Baton Rouge, 258 La. 175, 183-86, 245 So.2d 398, 400-02 (1971); *392 Mouledoux v. Maestri, 197 La. 525, 538-42, 2 So.2d 11, 15-17 (1941).
B. Tax and Bond Elections. Relator contends that the statute violates Article VI, §§ 29, 32 and 33 by authorizing the Recovery District to levy a tax and issue bonds without prior approval of a majority of the electors. Section 29 requires an election only when a local governmental subdivision, i.e., parish or municipality, seeks to levy and collect a sales tax. The Louisiana Recovery District is not a local governmental subdivision. Section 32 requires such an election only when a political subdivision seeks to levy a special tax for the purpose of "acquiring, constructing, and the judgment of the district court improving, maintaining, or operating any work of public improvement." The tax to be levied by the Recovery District is not for this purpose. Section 33 requires an election only when a political subdivision issues general obligation bonds. The bonds to be issued by the Recovery District are not general obligation bonds.
C. Surrender of Power to Tax. Relator argues that the Legislature by authorizing the Recovery District to levy a tax has violated the provisions of Article VII, § 1 which states that, except as otherwise provided by the constitution, the power of taxation vested in the Legislature shall never be surrendered or suspended. The constitution, however, expressly provides otherwise by Article VI, § 19, which confirms the Legislature's power to grant to special districts the power of taxation. Moreover, it is well settled that the Legislature in delegating taxing power to a political subdivision does not surrender that power because it can revoke the power entrusted to the political subdivision or modify it at its pleasure. Liter v. City of Baton Rouge, supra; Mouledoux v. Maestri, supra.
D. Due Process and Voting Rights. Although relator's federal due process and voting rights arguments have been raised untimely and for the first time in this court, we have considered them, and we find both to be without merit.

Conclusion
For the reasons assigned, the judgment of the court of appeal sustaining the respondent's peremptory exception raising the objection of no right of action is vacated, and the judgment of the district court upholding and declaring constitutional and valid Act 15 of the First Extraordinary Session of 1988, the taxes and bonds authorized thereby, and the Louisiana Recovery District created thereunder, is affirmed. It is further ordered, adjudged and decreed that any application for rehearing in this case be filed in this court not later than 5:00 P.M. on Saturday, June 25, 1988.
COURT OF APPEAL JUDGMENT VACATED. DISTRICT COURT JUDGMENT DECLARING ACT CONSTITUTIONAL AND VALIDATING BONDS AFFIRMED.
WATSON, J., did not participate in the consideration or decision in this case.
NOTES
[*] In Slay v. La. Energy & Power Authority, 473 So.2d 51, 53-54 (La.1985), this court held that a statewide public power authority created by the Legislature expressly as a political subdivision of the state does in fact constitute a unit of local government and therefore is a political subdivision. Although the court did not discuss the point the decision is at least implicit precedent for our present decision that the constitution does not place a limit on the geographical size or configuration of a political subdivision.