PONDER, Judge.
Plaintiffs appealed the judgment of the trial court dismissing their suit for change of custody on defendants’ exception of no right of action.
The only issue is whether plaintiffs, the natural parents of a minor child who has been legally adopted by the defendants, have the necessary legal capacity to file a suit for legal custody of the child.
We reverse and remand.
*1231 Briefly, the alleged facts are as follows: [1] Plaintiffs are the natural parents of the minor child, Robert Warren Hutton, Jr. (Robert). They consented, under coercion by the defendants, to the defendants’ adoption of Robert soon after his birth in 1978.[2] Defendant, Tina Roberta Hutton, is the mother of plaintiff, Lorraine Fiero Walton. The remaining defendant, Robert Warren Hutton, is Mrs. Walton’s stepfather.
Plaintiffs filed a “Motion for Change of Legal Custody” in East Baton Rouge Par-' ish Family Court. They alleged that they had had physical custody of Robert since sometime in 1978 and requested permanent legal custody. They did not challenge the validity of the adoption proceedings. In response, the defendants filed several exceptions, including an exception of no right of action.[3] The latter exception only was sustained, and plaintiffs’ suit was dismissed.
The peremptory exception of no right of action raises the question of whether the plaintiff has any interest in enforcing judicially the right asserted and whether he or she has the legal capacity to bring the action. LSA-C.C.P. art. 927; Lambert v. Donald G. Lambert Construction Co., 370 So.2d 1254 (La.1979).
By virtue of their adoption of Robert, the defendants áre his legal parents; by virtue of their consent to Robert’s adoption, the plaintiffs have forfeited all parental rights. LSA-C.C. art. 214.[4] Usually, blood parents such as the plaintiffs who have given up their child to adoption are, thereafter, in all respects legal strangers to their natural child.[5] However, plaintiff Lorraine Fiero Walton is in the anomalous position of being considered by the law as Robert’s sister.
The trial judge, in denying the plaintiffs the right to proceed in their suit, noted this anomalous legal relationship and seemed to conclude that this familial relationship would, normally, vest Mrs. Walton, at least, with the right to seek custody of Robert. Without that familial relationship, established by operation of law, the plaintiffs would be legal strangers, and, he concluded, legal strangers cannot seek custody. However, the trial judge apparently disregarded Mrs. Walton’s sibling relationship entirely, for he ultimately concluded that allowing the plaintiffs to proceed in their suit would provide precedent for all natural parents who have a change of heart to attack collaterally adoption proceedings by bringing suit for legal custody.
Defendants argue that the jurisprudence has limited the right to seek custody to *1232 grandparents and uncles of a child. They are not entirely correct, since several cases have recorded custody contests between blood parents and aunts of a child, as well. See e.g., In the Matter of Parker, 434 So.2d 1256 (La.App. 1st Cir.1983); La-Pointe v. Menard, 412 So.2d 223 (La.App. 3d Cir.1982); Robertson v. Robertson, 243 So.2d 847 (La.App. 2d Cir.1971).
Our jurisprudence contains countless cases involving custody disputes between parents and non-parents. None, however, has involved non-parents who were not also relatives, by blood or marriage, of the children concerned.[6] This has been the case, no doubt, because relatives are much more likely than non-relatives to be concerned enough over a child’s welfare to seek his or her custody (as opposed to initiating state action). However, we agree with the statement made by this court in State ex rel. Stokes v. Stokes, 222 So.2d 573, at 577 (La.App. 1st Cir.1969), writ refused, 254 La. 472, 223 So.2d 874 (1969) and Gautreaux v. Allen, 345 So.2d 103, at 105 (La.App. 1st Cir.1977), that:
“We find no prohibition, statutory or jurisprudential, that would prevent a person other than a parent from seeking legal custody of a child.”[7]
We conclude that the right to bring such an action is not limited to relatives, be they legal or blood.
For the foregoing reasons, the judgment of the trial court sustaining the defendants’ exception of no right of action and dismissing the plaintiffs’ suit is reversed, and the suit is remanded for further proceedings not inconsistent with this opinion. The order granting the plaintiffs provisional custody of the minor child Robert is reinstated, to continue in effect until the issue of legal custody is adjudicated. Defendants are to pay all costs of this appeal.
REVERSED AND REMANDED.

. For the purposes of the exception of no right of action, all well-pleaded facts in the plaintiffs’ petition must be taken as true. Burns v. Genovese, 254 La. 237, 223 So.2d 160 (La.1969).

. Plaintiffs were not married at that time. Plaintiff, Mrs. Walton, alleged that she was only fifteen and her mother and stepfather would not grant her permission to marry Mr. Walton unless she consented to the adoption.

. Defendants’ other exceptions were denied. These included: (1) no cause of action, (2) vagueness and (3) lack of subject-matter jurisdiction.

. LSA-C.C. art. 214 provides, in part:
"The adopted person is considered for all purposes as the legitimate child and forced heir of the adoptive parent or parents, including the right of the adopted person or his lawful descendants to inherit from the adoptive parent or parents or the relatives of the latter by blood or by adoption, and the right of the adoptive parent or parents or the relatives of the latter by blood or by adoption to inherit from the person adopted or his lawful descendants, in the same manner and to the same extent as if the person adopted were in fact the legitimate child of the adoptive parent or parents.
"* * * [U]pon adoption: the blood parent or parents and all other blood relatives of the adopted person, except as provided by R.S. 9:572(B), are relieved of all of their legal duties and divested of all of their legal rights with regard to the adopted person, including the right of inheritance from the adopted person and his lawful descendants; and the adopted person and his lawful descendants are relieved of all of their legal duties and divested of all of their legal rights with regard to the blood parent or parents and other blood relatives, except the right of inheritance from them.”

.Of course, with the exception provided for in LSA-C.C. art. 214, which allows the adopted person to retain the right of inheritance from his or her blood parents.

. We do not include in this discussion those cases in which custody has been transferred to the State, and foster parents are involved in the custody dispute.

. Stokes involved an action by a maternal grandmother for permanent legal custody of her four grandchildren, which was contested by the natural mother. Whether the plaintiff had a right of action was not at issue, so the statement quoted was dicta. However, its status as dicta does not make it any less persuasive. Gau-treaux arose from a habeas corpus proceeding brought by the natural mother of a child against the child’s biological father, who had physical custody of the child. The child was born while the plaintiff was living with the defendant but remained married to another man. At the trial level, the plaintiff contended that the defendant had no standing to claim custody because he had not rebutted the legal presumption that her husband was the father of the child. The trial court ruled in favor of the plaintiff and the defendant appealed. On appeal, this court noted: "While the issue of paternity may have an effect upon the application of the rule that parents have the paramount right to custody, in a habeas corpus proceeding for custody of a child, it has no effect on the right of the party to claim custody.” (p. 105) We see no reason to limit the applicability of this principle to habeas corpus proceedings.