523 So.2d 899 (1988)
Kevin M. LILLY
v.
John ANGELO d/b/a General Practice Clinic, Inc.
No. CA-8721.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 1988.
Rehearing Denied May 11, 1988.
Writ Denied June 27, 1988.
*900 Lanny R. Zatzkis, Karen D. McCarthy, Lawrence E. Mack, Lanny R. Zatzkis, APLC, New Orleans, for plaintiff/appellee.
Warren A. Goldstein, New Orleans, for defendant/appellant.
Before GARRISON, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
This appeal arises from a judgment of the First City Court for the Parish of Orleans ordering the eviction of defendant-appellant, Dr. John Angelo, d/b/a General Practice Clinic, Inc. and restoring the premises located at Piety Street to plaintiff-appellee, Adolph Bynum.[1]

FACTS:
In January, 1984, Adolph Bynum and Dr. John Angelo entered into an oral month to month lease of the premises located at 2731 Piety Street. In May, 1987, Bynum, desiring possession of the premises, served upon Angelo a notice to vacate, thereby terminating the month to month lease. When Dr. Angelo refused to vacate the premises, Bynum initiated these eviction proceedings. Following a hearing on the merits, the trial court concluded that Bynum was entitled to possession of the premises. The court made the Rule for Eviction absolute on June 11, 1987 ordering Dr. Angelo to vacate the premises. From that judgment, Dr. Angelo appeals asserting the following assignments of errors:
1) The trial court erred in failing to dismiss the rule to evict, brought by Kevin Lilly who did not prove he was the owner, or agent of the owner, or the lessor;
2) The trial court erred in failing to dismiss the rule to evict, since the notice to vacate was fatally defective in demanding possession on the date admittedly prior to the date that Bynum was entitled to possession.
3) The trial court erred in failing to dismiss the rule to evict, since it was brought against Dr. Angelo, an individual who was not the lessee or occupant, but merely the shareholder of the corporation that was known as the tenant and had paid the rent.
4) The trial court erred in finding, as a matter of law, that an attorney cannot bind his client in lease negotiations, thus precluding a finding that an agreement of sublease was reached with Bynum's attorney, admittedly authorized to negotiate the lease on behalf of his client.
5) The trial court erred in finding that there was no agreement of sublease entered into by the parties, simply because the document evidencing the agreement had not been signed.
6) The trial court erred in refusing to hold that Bynum was estopped to deny the existence of the new sublease based upon his words and conduct, and Dr. Angelo's justifiable and detrimental reliance and change of position as a consequence of such conduct and words.
7) The trial court erred in failing to rule, in assessing the quality of proof offered by the parties, that the unexplained failure of Kevin Lilly to testify gives rise to the inference that he would have testified unfavorably to Bynum's cause.
8) The trial court further erred and prejudiced Dr. Angelo's proof by refusing to order Bynum to produce documents duly subpoenaed for trial, which documents would have corroborated Dr. Angelo's *901 factual contentions regarding the existence of a verbal agreement of sublease and Bynum's thereafter renouncing the agreement for his own personal reasons.
9) The trial court further erred in excluding evidence that would have shown that Bynum similarly breached another agreement he had made with another tenant, as part of his plan to renounce his agreements and personally take over the medical and dental clinics located on the premises.
10) The trial court erred in failing to disqualify Bynum's counsel as trial counsel, after it was advised that said counsel would be called to testify, unduly prejudicing Dr. Angelo's presentation of the case, causing the trial court to be improperly influenced by the testimony of Bynum's counsel in the guise of argument and denying Dr. Angelo the right of effective cross-examination, evidence by such testimony as "I guess I have to step down and argue from the other side of the bench," after testifying," He's just setting this up for the Court of Appeals."

ASSIGNMENTS OF ERROR 1 AND 7:
Dr. Angelo asserts that Kevin Lilly is an improper party plaintiff. Dr. Angelo argues that Bynum failed to prove Lilly was his duly authorized agent.
Code of Civil Procedure Article 700 reads:
"When a plaintiff sues as an agent to enforce a right of his principal, or as a legal representative, his authority or qualifications is presumed, unless challenged by the defendant by the timely filing of the dilatory exception. When so challenged, the plaintiff shall prove his authority or qualification on the trial of the exception.
Code of Civil Procedure Article 694 reads:
"An agent has the procedural capacity to sue to enforce a right of his principal, when specially authorized to do so.
For all procedural purposes, the principal is considered the plaintiff in such an action. The defendant may assert any defense available against the principal in a reconventional demand."
The above articles show that Dr. Angelo's contention that the burden of proof is on Bynum to show Lilly was his duly authorized agent is incorrect. C.C.P. Art. 700 clearly shifts the burden to the plaintiff only when the agents procedural capacity has been challenged thru the filing of a dilatory exception prior to answer or judgment. La.C.C.P. Arts. 926, 928; KirkebyNatus Corporation v. Campbell, 210 So.2d 103 (La.App. 4th Cir.1968). No dilatory exception was filed by Dr. Angelo. Rather, Dr. Angelo filed peremptory exceptions of no right and no cause of action. C.C.P. Art. 927. Thus, the burden was upon Dr. Angelo to prove the exceptions of no right and no cause of action. The record shows Dr. Angelo failed to meet this burden. He offered no evidence that Lilly was not the duly authorized agent for Bynum. For purposes of exceptions of no right of action, all well-pleaded facts asserted by the plaintiff must be taken as true unless the defendant meets his burden of proving otherwise. Walton v. Hutton, 457 So.2d 1230 (La.App. 1st Cir.1984).
In addition, Dr. Angelo asserts that Lilly's failure to appear at trial should have been considered by the trial court as a negative inference that he would not have testified favorably for Bynum. We disagree.
Lilly's sole role as agent for Bynum was to file the eviction proceedings and obtain a notice of eviction on behalf of Bynum against Dr. Angelo. Dr. Angelo presented no evidence that he was unaware that it was Bynum and not Lilly who was the plaintiff asserting his rights against him.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 2:
Code of Civil Procedure Article 4701 and Civil Code Article 2686 read in pertinent part as follows:
C.C.P. Article 4701:
* * * * * *
*902 "If the lease has no definite term, the notice required by law for its termination shall be considered as a notice to vacate under this article."
* * * * * *
C.C. Article 2686:
"... If no time for its duration has been agreed on, the party desiring to put an end to it must give notice in writing to the other, at least ten days before the expiration of the month, which has begun to run." (emphasis added).
In strict compliance with the above articles, Bynum issued a ten (10) day notice to Dr. Angelo on May 8, 1987. Said notice was served on Dr. Angelo on May 11, 1987. Civil Code Article 2686 requires only a minimum of ten days notice before the expiration of the month. The fact that Dr. Angelo was given more than ten days notice is not a fatal defect. The notice served upon Dr. Angelo was a proper notice of termination and a proper notice to vacate.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 3:
Dr. Angelo asserts that Bynum seeks to evict the wrong party defendant since Dr. Angelo, in his individual capacity is not Bynum's tenant. Dr. Angelo asserts that General Practice Clinic, Inc. is the proper party defendant.
A review of the testimony clearly shows that the original month to month lease arrangements were made between Bynum and Dr. Angelo in his individual capacity and not as representative of a corporation. The fact that Dr. Angelo later incorporated his practice is irrelevant.
This specification of error is without merit.

ASSIGNMENTS OF ERROR 4 AND 5:
In ruling on the existence of a long term lease agreement, the trial court stated:
"I have not heard a single word of evidence nor seen a single piece of evidence that shows methat leads me to believe in any way, shape or form that he [Bynum's attorney] had authority to bind his client."
La.C.C. Art. 1947 provides:
"When in the absence of a legal requirement, the parties have contemplated a legal form, it is presumed that they do not intend to be bound until the contract is executed in that form."
The testimony clearly reflects that counsel for the parties had been conducting negotiations since February, 1987. However, no final draft was ever completed, reviewed, approved or signed by Bynum or Dr. Angelo. Thus, no lease other than the oral month to month lease ever existed between them. This is clear from the following testimony:
EXAMINATION OF MR. BYNUM BY MR. ZATZKIS:
"Q. Can you tell me whether or not in fact you have ever reviewed the final draft of the lease when the negotiations terminated?
A. No.
Q. Did you in any way agree to the terms of the draft that were negotiated?
A. No."
EXAMINATION OF MR. ZATZKIS BY MR. GOLDSTEIN:
"Q. So it is your testimony that, as far as you are concerned, we both had an agreement that was acceptable to both sides and, in your testimony, subject to the approval or disapproval of your client?
A. No, I wouldn't say that at all. I would say that we had a lease that had many provisions in it, some of which had never been discussed with my client whatsoever, and which in no way I had authority to bind him to; and what we had done was to put forth a proposal that we had jointly agreed upon that might fit the situation. I had not discussed it with my client, and I am clear that I told you that. I don't consider that to be a final deal in any shape, manner or form."
Dr. Angelo further contends that his counsel and Bynum's counsel bound them to a draft produced during negotiations. The trial court's finding that this was unsubstantiated *903 is correct. Mr. Zatzkis repeatedly testified that he was without authority to bind Bynum without his consent.
EXAMINATION OF MR. ZATZKIS BY MR. GOLDSTEIN:
"Q. Did there ever come a time when you advised me that you did not have authority to make a proposal on behalf of your client which, if accepted, would be binding?
A. I never had authority. I never told you I had authority, so I never had to tell you I didn't have authority.
A. I never said that we have a deal. Those are not my kind of words. Those are yours. I never said we had a deal, and I always said to you and everybody else that I deal with when I am negotiating for a client, `It's subject to my client's approval.'"
EXAMINATION OF MR. BYNUM BY MR. ZATZKIS:
"Q. At the meeting, did you understand, Mr. Bynum, that I was supposed to make a draft of a sublease from you to Mr. Angelo, a preliminary draft, send it to Mr. Goldstein and then if we agreed on it, it would then be agreed on by the clients?"
THE WITNESS:
"Yes."
Thus, the trial court's finding that there was insufficient evidence to substantiate a long term lease by the parties is not erroneous.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 6:
Dr. Angelo asserts that even if no binding, contract exists Bynum is estopped from denying its existence, and is estopped from these eviction proceedings because he relied upon Bynum's words and conduct. That is, Angelo argues detrimental reliance and change of position. We disagree.
Our Supreme Court has defined equitable estoppel as "... the effect of voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct". American Bank and Trust Co. v. Trinity Universal Ins. Co., 251 La. 445, 205 So.2d 35 (1967), at 40.
The doctrine is founded upon good faith and is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. American Bank and Trust Co. v. Trinity Universal Ins. Co., supra.
Equitable estoppel is not favored in our law and is applied only when the ends of justice so demand. John Bailey Contractor, Inc. v. State Department of Transportation and Development, 439 So. 2d 1055 (La.1983).
It is a doctrine of last resort; there is no statutory material or body of jurisprudence that justifies its use and it has been discussed by our Supreme Court only to disallow a claim or defense that an opponent ought not to be able to make. Howard Trucking Co. Inc. v. Stassi, 485 So.2d 915 (La.1986), cert. den., ___ U.S. ___, 107 S.Ct. 432, 93 L.Ed.2d 382.
In those rare instances when it is applied, three elements must be present, (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of that reliance. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975).
Here, Dr. Angelo and Bynum began negotiations in February, 1987 for a written lease. Dr. Angelo asserts that during the course of these negotiations he was led to believe that an agreement had been reached and entered into by the parties. None of the evidence substantiates such a claim. In his reasons for judgment the trial court stated:
"I just don't see what the Plaintiff did in this case that would justify the Defendant to believe anything other than the fact that there was no agreement until it was reduced to writing. I don't think that he agreed to anything."
*904 The record clearly justifies the trial court's conclusion. The testimony of Dr. Angelo and his attorney plainly shows that Dr. Angelo never intended to be bound until a written agreement was completed, agreed upon and signed by both parties. Dr. Angelo could not have reasonably relied upon the statements made during the course of the negotiations to maintain a defense of estoppel.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 10:
Dr. Angelo asserts the trial court erred in refusing to disqualify Lanny R. Zatzkis, attorney for Bynum after Zatzkis was notified by Dr. Angelo at trial that he was to be called as a witness.
The Rules of Professional Conduct, Rule 3.7, effective January 1, 1987, provide in pertinent part:
* * * * * *
"(c) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."[2]
A review of the testimony shows that Mr. Zatzkis' testimony was in no way prejudicial to Mr. Bynum. The trial court's ruling that Mr. Zatzkis could continue representing Mr. Bynum was correct and in no way constituted a violation of the above rule.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR 8 AND 9:
Dr. Angelo offers no proof or argument to support these assignments of error.
Assignments of error neither briefed nor argued are deemed abandoned on appeal. Unif. R.C.A. 2-12.4.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Kevin Lilly was acting as the agent of Adolph Bynum.
[2] The Code of Professional Responsibility, in effect at the time this matter was tried, contained an identical provision. See, DR 5-102.