Judge Madeleine M. Landrieu
|! This litigation arises out of four gas supply agreements. Parties to the litigation are Huntsman International, L.L.C., Praxair, Inc. and Rubicon, L.L.C. Huntsman is a chemical manufacturer. It acquires industrial gases used to produce methylene-diphenyl diisocyanate (“MDI”) at its plant in Geismar, Louisiana. Rubicon operates Huntsman’s MDI plant. Huntsman owns 100% of the MDI products produced at the plant and directs the work of Rubicon. Praxair operates a plant adjacent to Huntsman’s MDI plant and supplies *903 certain gases to Huntsman’s MDI plant.[1] Praxair contends that it supplies the gases to Rubicon pursuant to four gas supply agreements between Praxair and Rubicon or their predecessors in interest. Huntsman contends that although it is not a named party to the gas supply agreements, it can enforce the agreements as an assignee or successor in interest of a signatory, as the principal of a signatory agent and as a third party beneficiary.
| ^Huntsman and Rubicon filed suit against Praxair asserting claims of breach of contract, detrimental reliance and unjust enrichment, alleging that Praxair has failed to meet its obligations under the gas supply agreements to deliver gas supplies to Huntsman’s MDI plant. Praxair filed certain exceptions to the original and first amending and supplemental petitions. Some of these exceptions were denied, others were granted. As to those exceptions granted, the trial court allowed Huntsman and Rubicon leave to amend their petition to remove the grounds of the exceptions as per La. C.C.P. art. 934. Huntsman and Rubicon then filed a Second Amended and Supplemental Petition.[2] Praxair responded with exceptions of no right of action as to Huntsman’s breach of contract claim and no cause of action as to both Huntsman’s and Rubicon’s claims of detrimental reliance and unjust enrichment.
In its exception of no right of action as to Huntsman’s breach of contract claim, Praxair argued that Huntsman failed to show that it is a party, to the gas supply agreements or that Rubicon acted as an agent of Huntsman in executing those agreements. In its exception of no cause of action as.to Huntsman’s detrimental reliance and unjust enrichment claims, Prax-air argued that those claims are based on the same alleged failures of Praxair to perform under the gas supply agreements, and Huntsman cannot cure its lack of standing by relabeling its contract claim under different headings.
|sOn June 25, 2015, the trial court granted Praxair’s exceptions as to Huntsman, dismissing Huntsman’s claims against Praxair, with prejudice.[3] Huntsman has filed this appeal.
Huntsman first argues that the trial court erred by applying the wrong legal standard in ruling on Praxair’s exceptions of no right of action and no cause of action. This argument stems from the trial court’s reasons for judgment, which state:
In this very complicated case, Huntsman International, L.L.C. (“Huntsman”) faded to show that it is a party to the gas supply contract with Praxair, Inc., or that Rubicon, L.L.C. (“Rubicon”) acted as an agent of Huntsman in executing these contracts. Huntsman’s claims of unjust enrichment and detrimental reliance are dismissed for the same reasons. Since Rubicon was a signatory to the *904 contracts at issue, it can pursue its breach of contract claims, but no unjust enrichment or detrimental reliance.
Huntsman argues that the trial court erroneously shifted the burden of proof from Praxair to Huntsman to prove that it had a right of action for breach of contract. Huntsman correctly states that the exceptor, Praxair, had the burden of proving that Huntsman has no right of action for breach of contract against Praxair. See Hospitality Consultants, LLC v. Angeron, 2009-1738 (La.App. 4 Cir. 6/9/10), 41 So.3d 1236, 1240. We note, however, that the trial court’s statements to which Huntsman objects were made only in reasons for judgment. “Appeals are taken from the judgment, not the written reasons for judgment.” Greater New Orleans Expressway Com’n v. Olivier, 2002-2795, p. 3 (La. 11/18/03), 860 So.2d 422, 24. Thus, we review the judgment of the trial court with the understanding that the burden was on Praxair to prove the grounds of its exceptions.
Huntsman next argues that the trial court erred in granting Praxair’s exception of no right of action as to its breach of contract claim against Praxair. Huntsman acknowledges that either Rubicon or Rubicon’s predecessors in interest were signatories to the four gas supply agreements at issue and that it, Huntsman, was not.[4] However, Huntsman argues that it presented factual allegations in its petition demonstrating that it has a right to enforce the contracts against Praxair on three independent bases: (1) as successor in interest/assignee of Rubicon and its predecessors in interest; (2) because Rubicon and its predecessors in interest acted as Huntsman’s agent in entering into the contracts and amendments; and (3) because Huntsman is a third party beneficiary of the contracts and their amendments (stipulation pour autrui). Huntsman argues that Praxair did not present evidence to refute these allegations.
“It is well settled that on consideration of an exception of no right of action the averments of fact in the pleading, must be taken as true in the absence of evidence to the contrary.” Board of Directors of Louisiana Recovery Dist. v. All Taxpayers, Property Owners, and Citizens of State of La, 529 So.2d 384, 386 (La.1988). La.C.C.P. art. 681 states “[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts.” “The function of an exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action | ^asserted in the suit.” Reese v. State, Dept. of Public Safety & Corrections, 2003-1615 (La. 2/20/04), 866 So.2d 244, 246; See La. C.C.P. art. 927. “In examining an exception of no right of action, a court should focus on whether the particular plaintiff has a right to bring the suit while assuming that the petition states a valid cause of action for some person.” J-W Power Co. v. State ex rel. Dept. of Revenue & Taxation, 2010-1598 (La. 3/15/11), 59 So.3d 1234, 1239, citing Reese, 2003-1615, p. 3; 866 So.2d at 246. The exception of no right of action does not raise the question of the plaintiffs ability to prevail on the merits or the question of whether the defendant may have a valid defense. Touzet v. V.S.M. Seafood Services, Inc., 96-0225 (La.App. 4 Cir. 3/27/96), 672 So.2d 1011, 1012-1013.
On an exception of no right of action, the parties may introduce evidence *905 to support or controvert the exception. La. C.C.P. art. 931. As already discussed, the exceptor has the burden of proof. Hospitality Consultants, LLC v. Angeron, 2009-1738 (La.App. 4 Cir. 6/9/10), 41 So.3d 1236, 1240. The determination as to whether a plaintiff has a right to bring an action raises a question of law, which requires de novo review. Eagle Pipe and Supply Inc. v. Amerada Hess Corp., 2010-2267 (La. 10/25/11), 79 So.3d 246, 256.
According to the allegations of the petition, Huntsman owns a large chemical plant in Geismar, Louisiana, which manufactures methylene diphenyl diisocyanate (“MDI”), and is operated by Rubicon. Praxair operates a plant adjacent to Huntsman’s MDI plant, and is the exclusive supplier of hydrogen and carbon monoxide to Huntsman’s MDI plant under four gas supply 'agreements and amendments thereto. Hydrogen and carbon monoxide are two critical components in the manufacture of MDI. MDI is used in making polyurethane, which is a | ^chemical also manufactured by Huntsman. Huntsman and Rubicon have alleged that Praxair has failed to meet its obligations under the agreements to deliver these gas supplies to Huntsman’s MDI plant.
The four gas supply agreements at issue were executed on April 1, 1970, June 18, 1981, December 1, 1986 and January 1, 1998, and have all been amended. The 1970 and 1981 agreements were executed between Rubicon Chemicals, Inc. (“RCI”) and Liquid Carbonic Corp. (Praxair’s predecessor in interest). The 1986 agreement was executed between Rubicon Inc. and Liquid Carbonic Specialty Gas Corporation, and stated that Rubicon Inc. succeeded in interest to the rights and obligations of ICI Americas, Inc. “(as the successor through merger of Rubicon Chemicals Inc.)”, and that Liquid Carbonic Specialty Gas Corporation succeeded in interest to the rights and obligations of Liquid Carbonic Corp. The 1998 agreement was executed between Praxair (formerly Liquid Carbonic Corp.) and Rubicon Inc. (as successor to RCI), and stated that Praxair and Rubicon Inc. are parties to the agreements dated April 1, 1970, June 18, 1981 and December 1, 1986 (and amendments thereto), for the supply of hydrogen gas and carbon monoxide gas in certain quantities by Praxair to Rubicon Inc.
On June 30,1999, a Transfer Agreement was executed between Huntsman ICI Holdings LLC and ICI Americas, Inc. (a successor of RCI) whereby ICI transferred, among other items, its polyurethanes business and business contracts to Huntsman ICI Holdings LLC. In this agreement, Huntsman ICI Holdings LLC also acquired partial ownership of Rubicon. The petition states that all references to Huntsman also include its predecessors in interest.[5] On October 3, 2007, after 17Huntsman had acquired its interest in Rubicon, amendments to the 1970, 1981 and 1986 gas supply agreements were executed in which Praxair and Rubicon (as successor to Rubicon Inc.) reaffirmed terms and conditions of those agreements.
Huntsman and Rubicon allege that in 1999, Huntsman became a successor in interest to RCI and the 1970 and 1981 gas supply contracts and amendments by virtue of its acquisitions of all polyurethanes assets of ICI Americas, Inc. (“ICI”), which was also a successor to RCI.[6] The petition *906 also, states that Praxair acquired these contracts through its acquisition of Liquid Carbonic, also a named party to the contracts.
Huntsman and Rubicon also allege that Rubicon and its predecessors entered into all four gas supply agreements as the agent of Huntsman. The Huntsman/Rubicon petition includes a paragraph, which states: “Rubicon LLC specifically pleads that it, and its predecessors, acted as agent on behalf of Huntsman in entering into contracts, and all amendments thereto, with Praxair for the supply of hydrogen and carbon monoxide to be used for the benefit of Huntsman’s MDI plant.” Additionally, Huntsman and Rubicon included several paragraphs in their petition in support of their allegation that Rubicon operates Huntsman’s MDI plant solely for Huntsman’s benefit. Specifically, they alleged that Rubicon does not own, sell or hold title to any commercial product consumed and produced at any of the Huntsman plants, and that Rubicon acts as Huntsman’s agent when acquiring raw mar terials consumed in the production of MDI at Huntsman’s plant.
| sIn support of its exception of no right of action, Praxair submitted a memorandum and attached the four gas supply agreements, the amendments thereto and affidavits of two Praxair employees: Thomas R. Dalton, Executive Director of Prax-air Hydrogen & Co.; and Amer Akhras, General Manager, Helium and Rare'Gases. Both affidavits were executed in 2015. Mr. Dalton stated that Praxair knew Rubicon is a joint venture partly owned by Huntsman. However, Mr. Dalton stated that Praxair “never has believed” Huntsman was a party to the gas supply agreements and “never believed” that Rubicon acted as an- agent for Huntsman regarding the agreements. Mr. Akhras stated in his affidavit that he “understood” Rubicon, not Huntsman, was the party to the agreements. Each stated that it was “understood” that Rubicon employees were acting on behalf of Rubicon regarding the gas supply agreements, even if they also held positions at Huntsman, and that no one ever represented to either of them that Rubicon was acting as an agent for Huntsman.
In opposition to Praxair’s exceptions, Huntsman and Rubicon submitted the 1999 transfer agreement between ICI Americas Inc. and Huntsman ICI Holdings- LLC and- several affidavits. The first affidavit is that of Mark Dearman, Huntsman’s Operations Director for the Polyurethanes Division in the-Americas, and General Manager of Rubicon LLC. Mr. Dearman stated that Rubicon LLC is the current 50/50 operating joint venture between its owners, Huntsman and Chemtu-ra Corporation, and operates Huntsman’s MDI plant for the sole benefit of Huntsman. According to Mr. Dearman, Rubicon does not sell or market any commercial products, and has no reason to acquire raw materials consumed at Huntsman’s MDI plant except for the sole benefit of Huntsman. He further stated that when acquiring raw materials (such as the industrial gases purchased from ^Praxair) used to produce Huntsman’s MDI products, Rubicon functions as Huntsman’s agent in those transactions.
The second affidavit is that of Steven Hostetter, a retired Huntsman employee who worked in various capacities for ICI until its acquisition by Huntsman in 1999. He served as Controller for the Americas *907 region of Huntsman’s polyurethanes business from 1999 to 2002, as Finance Director of that business from 2002 to 2004, and as Global Vice President and Finance Director from 2004 to 2011. Mr. Hostetter also served on the board of Rubicon Inc. (later known as Rubicon LLC) from 1997 to 2005. Mr. Hostetter stated that Praxair is the exclusive supplier of hydrogen and carbon monoxide used at Huntsman’s MDI plant in Geismar. He also stated that in its role as operator of Huntsman’s MDI plant, Rubicon sometimes contracts on Huntsman’s behalf for the purchase of raw materials needed to produce MDI. When Rubicon contracts for the purchase of raw materials used to make. MDI for Huntsman, Rubicon acts as Huntsman’s agent in the transaction. He further stated that because Huntsman has the right to control the amount of MDI products produced at the MDI plant, it also has the right to instruct Rubicon as its operator to increase or decrease the amount of industrial gas Rubicon takes from Praxair under the gas supply agreements to adjust as needed the manufacturing output at Huntsman’s MDI plant.
The third affidavit offered by Huntsman and Rubicon is that of Brian Ridd, Huntsman’s Senior Vice President of Purchasing. and Distribution since 2000. He stated that Rubicon operates Huntsman’s MDI plant in Geismar on behalf of Huntsman and for Huntsman’s sole benefit. He further stated that he often participates directly in negotiations with Huntsman’s suppliers, including Praxair, and also supervises Huntsman employees who directly participate in negotiations |inwith suppliers. He said that the purchasing in Rubicon’s name of raw materials used at Huntsman’s MDI plant has been negotiated by Huntsman personnel for years. Mr. Ridd stated that after Huntsman’s acquisition of ICI’s polyurethanes assets, the Rubicon Board of Directors approved having Huntsman’s corporate purchasing group handle negotiations for raw materials needed to produce MDI at Huntsman’s plant, and once negotiated, these contracts were often executed by Rubicon on .Huntsman’s behalf.
The trial court considered the evidence presented in support of and in opposition to Praxair’s exception of no right of action, and granted the exception as to Huntsman’s breach of contract claim against Praxair.
Huntsman has never alleged that it is a signatory to any of the gas supply agreements or amendments thereto, but argues that the fact that it is not a signatory does not preclude.it from having the right to recover for Praxair’s breach of those agreements. Specifically, Huntsman argues that Praxair has presented no evidence to refute its allegations in its petition that it has a right of action to assert a breach of contract claim against Praxair as an assignee or successor in interest of a signatory, as the principal of a signatory agent and as a third party beneficiary. As stated above, for purposes of an exception of no right of action, the averments of fact in the pleading must be taken as true in the absence of evidence to the contrary. Board of Directors of Louisiana Recovery Dist., 529 So.2d at 386.
For reasons that follow, we find no merit in Huntsman’s argument that it has a right of action for breach of contract against Praxair as a third party beneficiary of the four gas supply agreements and amendments thereto. However, we find that Huntsman has set forth factual allegations that it has a right of action-to bring a breach of contract claim against Praxair as the successor in interest of RCI as to the |, ,1970 and 1981 agreements and amendments thereto, and as the principal of a signatory agent (RCI, Rubicon Inc. or Ru *908 bicon LLC) as to all four agreements and their amendments, and Praxair has not presented evidence to the contrary. Accordingly, for reasons that follow, we find the trial court erred in granting Praxair’s exception of no right of action as to Huntsman’s breach of contract claim.
We first address Huntsman’s argument that it has a right of action for breach of contract against Praxair as a third party beneficiary of the gas supply agreements. La. C.C. art. 1978 provides that “a contracting party may stipulate a benefit for a third person called a third party beneficiary.” Such a contract for the benefit of a third party is commonly referred to as a “stipulation pour autrui.” Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary, 2005-2364 (La. 10/15/06), 939 So.2d 1206, 1211. The three criteria for detei'mining whether contracting parties have provided a benefit for a third party are: 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee. Joseph, 2005-2364, pp. 8-9, 939 So.2d at 1212. “The most basic requirement of a stipulation pour autrui is that the contract manifest a dear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden-of proof.” Joseph, 2005-2364, p. 9, 939 So.2d at 1212. A stipulation pour autrui is never presumed, and the party claiming the benefit bears the burden of proof. Idr, See La." C.C. art. 1831.
The gas supply agreements at issue do not include any provision establishing a stipulation to benefit a third party in a manifestly clear manner. Without this most basic requirement of a stipulation pour autrui, ■ Huntsman did not carry its | ¶ {.burden of proving the benefit of such a stipulation. Accordingly, we conclude that Huntsman does not have a right of action to assert a breach of contract claim against Praxair as a third party beneficiary.
Huntsman also argues that it has a right of action for breach of contract against Praxair as an assignee of a signatory. Huntsman points to allegations in its petition that it is a direct successor in interest to RCI, a signatory of the gas supply agreements signed on April 1, 1970 and on June 18, 1981. Huntsman alleges that in 1992, RCI transferred its interest in the MDI plant and related contracts to its affiliate, ICI Chemicals, Inc., which affiliate subsequently changed its name to ICI Americas, Inc., which later transferred the MDI plant and related contracts to Huntsman in the 1999 transfer agreement. In paragraph 72 of the petition, Huntsman set forth the following sequence of events that led to its 1999 acquisition of the polyurethanes business from RCI (later renamed ICI Americas, Inc,), ownership of business contracts of ICI Americas and 50% ownership interest in Rubicon:
i. In July 1987, RCI changed its name to ICI Americas, Inc.
ii. In 1992, RCI (now ICI Americas, Inc.) deeded the MDI plant to its affiliate, ICI Chemicals, Inc. In this same transaction, RCI assigned all contracts associated with the MDI plant to ICI Chemicals, Inc., a wholly owned subsidiary, which included all of the Liquid Carbonic gas supply contracts.
iii. In 1993, ICI Chemicals, Inc. changed its name to ICI Americas, Inc.
iv. In 1999, Huntsman International acquired all of its polyurethane assets from ICI Americas, Inc., including
hi- ownership (by deed) of the MDI plant, and
*909 2. ownership (by assignment) of all “business contracts” of ICI Americas, Inc. associated with the MDI plant, which included all Liquid Carbonic contracts, and
3. as fully discussed below, 50% ownership of Rubicon, Inc.
Praxair responds to Huntsman’s allegation that it succeeded to RCI’s interest .in the 1970 and 1981 agreements by arguing that Rubicon, and not Huntsman, is the successor in interest to RCI. However, Huntsman’s petition alleges that Rubicon and Huntsman are both successors in interest to RCI, albeit as to different assets. The petition states that Rubicon is successor in interest to RCI as the owner of the Geismar'aniline plant, whereas Huntsman is the successor in interest to RCI as to the ownership of the MDI plant and assets acquired-by Huntsman through its acquisition of assets of ICI (a successor of RCI) in the 1999 transfer agreement.
The transfer agreement was executed in the name of Huntsman’s predecessor company, Huntsman ICI Holdings LLC, but the petition states that references in the petition to Huntsman include its predecessors in interest. The record shows that following the execution of the transfer agreement, Huntsman ICI Holdings LLC changed its name tó ■ Huntsman International Holdings LLC, and then' later merged with Huntsman International LLC, plaintiff herein.
Huntsman has set forth factual allegations and affidavits stating that RCI’s interests in the MDI plant and the 1970 and 1981 gas supply agreements and amendments thereto were transferred to Huntsman through the 1999 transfer 114agreement, and that it can enforce these two agreements as a successor in interest to RCI. Praxair presented no evidence to refute these allegations.
Additionally, Huntsman argues that it sufficiently pleaded its right of action for breach of contract as to all of the gas supply agreements and amendments thereto as the principal of a signatory agent (Rubicon and its predecessors, RCI and Rubicon Inc.).' The petition, filed by both Huntsman and Rubicon, includes the following allegation: “Rubicon LLC specifically pleads that it, and its predecessors, acted as agent on behalf of Huntsman in entering into contracts, and all amendments thereto, with Praxair for the supply of hydrogen and carbon monoxide to be used for the- benefit of Huntsman’s MDI plant.” The gas supply agreements and amendments thereto submitted by Praxair in support of its exception of no right of action do not réfute Huntsman’s allegation that it can enforce the agreements as principal of a signatory agent.
The affidavits submitted by Praxair employees also do not refute the allegations in the Huntsman/Rubicon petition that Rubicon and its predecessors acted as Huntsman’s agent in entering into the gas supply agreements and amendments thereto. These affidavits offer nothing more than the affiants’ subjective beliefs that Rubicon did. not act as an agent for Huntsman regarding the contracts and that Rubicon employees were acting only on behalf of Rubicon even if they were also employed by Huntsman. Furthermore, the statements in the affidavits that neither Rubicon nor Huntsman ever represented to Praxair that Rubicon acted as an agent for Huntsman with regard to the gas supply agreements 11Bor presented a document to that effect are immaterial to the issue of whether an agency relationship existed between Rubicon and Huntsman. Louisiana law does not require an agent to disclose to a third party that it is • contracting on behalf of a principal. Woodlawn Park Limited Partnership v. Doster Construction *910 Company, 623 So.2d 645, 647 (La.1993). “An undisclosed principal, upon the revealing of his identity, has the right to bring suit to enforce the contract directly against the party who contracted with his agent.” Id. Additionally, an agency relationship does not need to be in writing. La. C.C. art. 2993 (“The contract of mandate is not required to be in any particular form.”)
Huntsman sufficiently alleged that it can enforce the 1970 and 1981 agreements as successor in interest to RCI, and can enforce all of the agreements as the principal of a signatory agent. Because we accept the allegations in the petition as true in the absence of evidence to the contrary for purposes of an . exception of no right of action, we find that the. trial court erred in granting Praxair’s exception of no right of action as to Huntsman’s claim for breach of contract.
Huntsman also argues that the trial court erred in granting Praxair’s exception of no cause of action as to Huntsman’s alternative claims of detrimental reliance and unjust enrichment, We agree for reasons that follow.
An appellate court reviews a ruling sustaining an exception of no cause of action under a de novo standard because the exception raises a question of law, and the trial court’s determination . is based solely on the sufficiency of the petition, Badeaux v. Southwest Computer Bureau, Inc., 2005-0612, p. 7 (La. 3/17/06), 929 So.2d 1211, 1217. An exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. Id. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. Therefore, the court, accepting the well-pleaded allegations of fact as true, must determine whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Jackson v. State ex rel. Dep’t of Corr., 2000-2882 (La. 5/15/01), 785 So.2d 803, 806. A petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. Wallace C. Drennan, Inc. v. Sewerage & Water Bd. of New Orleans, 98-2423 (La.App. 4 Cir. 9/22/99), 753 So.2d 861, 864.
La. C.C. art. 1967 codifies the doctrine of detrimental reliance as follows:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to -his detriment and the other party was .reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee’s reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one’s detriment because of the re-banee. Suire v. Lafayette City-Parish Consol. Government, 2004-1459 (La. 4/12/05), 907 So.2d 37, 59. To prevail on a detrimental reliance claim,. 117 Louisiana law does not require proof of a formal, valid, and enforceable contract. Id.
Huntsman argues that its detrimental reliance claim is based not only on Prax-air’s promises to comply with the gas supply agreements, but also on additional representations made by Praxair to Huntsman. In addition to the allegations that Praxair made promises and representations to Huntsman and Rubicon that it *911 would comply with its contractual obligations to deliver hydrogen and carbon monoxide, the petition also alleges that Praxair made additional promises and representations to them to improve maintenance, reliability and backup supplies, and reduce equipment failures at its Geismar plant. The petition further alleges that Praxair knew Huntsman could not operate its MDI plant without the gases supplied by Praxair, and that the failure to deliver the gases would cause Huntsman severe financial harm. Huntsman and Rubicon allege that Praxair made promises and representations to them in order to induce them to maintain their relationship with Praxair. Accepting these allegations as true, Huntsman has sufficiently stated a cause of action for detrimental reliance.
The trial- court also granted Praxair’s exception of no cause of action as to Huntsman’s unjust enrichment claim. La. C.C. art. 2298 codifies the doctrine of unjust enrichment as follows:
A person who has-been-enriched without cause at the expense of another person is bound to compensate that person. The term “without cause” is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever'is less.
11sThe extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.
The five elements required to establish an unjust enrichment claim are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of “justification” or “cause” for the enrichment and impoverishment, and. (5) no other remedy at law available to plaintiff. Dugas v. Thompson, 2011-0178 (La.App. 4 Cir. 6/29/11), 71 So.3d 1059, 1067-1068.
The Huntsman/Rubicon petition includes the following allegations in support of their claims of unjust enrichment:
As a result of its1 failure to comply with the Supply Agreements, Praxair has been enriched without cause at the expense of Huntsman and Rubicon. Specifically, Praxair has been enriched by, •among other things, not having to spend millions of dollars on maintenance irm provements, facilities upgrades, new equipment .and parts, or backup supplies. Further, Praxair was enriched by not spending millions of dollars to purchase or otherwise procure, the gas supplies necessary to meet the requirements of Rubicon and Huntsman’s plants when Praxair’s plant was shut down or otherwise unable to deliver the industrial gases its was contractually obligated to supply.
Accepting these allegations as true, Huntsman has sufficiently stated a cause- of action for unjust enrichment against Praxair.
For the reasons stated above, we reverse the trial court judgment granting Praxair’s exception of no right of action as to Huntsman’s breach of contract claim, and its exception of no cause of action as to Huntsman’s alternative claims of detrimental reliance and unjust enrichment, and dismissing these, claims with prejudice. This case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED

. In this opinion, the term "petition” will refer to the Second Amended and Supplemental Petition filed by Huntsman and Rubicon against Praxair.

.The judgment also granted Praxair’s exception of no cause of action as to Rubicon’s detrimental reliance and unjust enrichment claims, and dismissed those claims with prejudice. Praxair did not file an exception as to Rubicon’s breach of contract claim, which is still pending in the trial court. Rubicon has not appealed the dismissal of its detrimental reliance and unjust enrichment claims.

. The Rubicon joint venture has undergone certain corporate transitions since its inception, and these entities have been called Rubicon Chemicals, Inc. ("RCI”),. Rubicon Inc. and Rubicon LLC.

. Huntsman ICI Holdings LLC subsequently changed its name to Huntsman International Holdings LLC, and then merged with Huntsman International LLC, plaintiff herein.

. The petition also alleged that Huntsman acquired the 1986 gas supply agreement through its acquisition of the MDI plant, and that this agreement was also executed by RCI. The 1986 agreement shows that it was execut *906 ed by Rubicon Inc., not RCI. Huntsman does not argue in its appeal brief that it acquired the 1986 agreement as the successor of RCI.